## A89A1344. LASOYA v. SUNAY.
(389 SE2d 339)

POPE, Judge.

Plaintiff Lasoya appeals from the trial court's order granting defendant Sunay's motion for summary judgment on plaintiff's medical malpractice claim.

The record shows that plaintiff had been experiencing a variety of gynecological problems for several months after the birth of her daughter. Plaintiff was treated for these problems by Dr. Pezzin, a general practitioner. However, plaintiff's problems persisted and a pelvic ultrasound was performed which revealed a mass in plaintiff's pelvic region. Defendant, a surgeon, performed an exploratory operation on plaintiff on September 28, 1981. Dr. Pezzin acted as his assistant during the procedure. During the surgery defendant discovered that plaintiff's right fallopian tube was very much enlarged and inflamed, that the mass observed on the ultrasound was a cyst or abscess between the tube and the uterus and that plaintiff's left tube was also enlarged and inflamed but not to the extent of her right tube. Defendant also noticed a bluish-colored lesion on the left tube. Defendant removed the right tube and cyst. However, pursuant to Pezzin's advice that the left tube should not be removed if at all possible, because to do so would render plaintiff sterile, defendant left the left tube intact except for obtaining a biopsy of the suspicious-looking area. The subsequent pathologist's report revealed focal endometriosis. According to plaintiff's affidavit, defendant informed plaintiff following the surgery that it was very unlikely that plaintiff could ever become pregnant because of the diseased condition of her remaining tube. Defendant testified in his deposition that he explained to plaintiff that he had removed her right tube and taken a biopsy of the lesion on her left tube, but that he did not discuss with her the possibility of her having children in the future, although he was of the opinion that it was unlikely that she would be able to con-

ceive because of the condition of her remaining fallopian tube. Defendant last saw the plaintiff on October 2, 1981, and had no further contact with her once she was released from the hospital.

Plaintiff visited Dr. Pezzin in the latter part of 1983, complaining that she had been unable to become pregnant despite efforts to the contrary. Dr. Pezzin expressed to plaintiff his doubts as to her ability to conceive "because of the endometriosis, and what [he] saw at the surgery," but nevertheless suggested that plaintiff consult a gynecologist and undergo a procedure known as a hysterosalpingogram, which would help determine the condition of plaintiff's remaining fallopian tube. However, shortly after her visit to Dr. Pezzin, plaintiff ended her relationship with her then boyfriend, and, no longer desiring to become pregnant, did not pursue the recommendations of Dr. Pezzin.

Plaintiff apparently did not attempt to become pregnant again until the latter part of 1985. When she was again unable to conceive, she consulted Dr. Sanders, a gynecologist, on December 2, 1986. She did not return to see Dr. Sanders until March 26, 1987, at which time she informed him that she wanted the test first suggested by Dr. Pezzin in December 1983. Dr. Sanders performed the test on April 3, 1987, and discovered a blockage in plaintiff's remaining tube.

Plaintiff filed the present action on November 7, 1987, contending that defendant negligently performed the biopsy of her left tube, which caused the subsequent blocking of the tube and her resulting sterility. Plaintiff also contended that defendant misrepresented to her that she was sterile because of the diseased condition of her tube, and not, as she contends, as the result of the negligently performed biopsy. The trial court granted defendant's motion for summary judgment, finding that the applicable statute of limitation had expired. We affirm.

1. The statute of limitation relevant to this action is OCGA § 9-3-71 as amended July 1, 1985. See *Hunter v. Johnson*, 259 Ga. 21 (376 SE2d 371) (1989). Subsection (a) of that section permits a medical malpractice action to be filed within two years after the resulting death or injury arising from the alleged negligent or wrongful act or omission. Subsection (b) provides, however, that "[n]otwithstanding subsection (a) of this Code section, in no event may an action for medical malpractice be brought more that five years after the date on which the negligent or wrongful act or omission occurred." Consequently, plaintiff's action, having been filed more than five years after the alleged negligent act, would be precluded by the statute of repose codified in OCGA § 9-3-71 (b). However, in applying this section, we have previously held that "the statute of ultimate repose should not be applied to relieve a defendant of liability for injuries which occurred during the period of liability, but which were concealed from the patient by the defendant's own fraud." *Hill v. Fordham*, 186 Ga.

App. 354, 358 (367 SE2d 128) (1988). "Fraud sufficient to toll the statute must be actual rather than constructive, except when there exists a confidential relationship between the parties, such as that between physician and patient. Where persons sustain toward another a relation of trust and confidence, their silence when they ought to speak . . . is as much a fraud in law as an actual affirmative false representation. The question of the existence of such fraud, and the related question of the patient's exercise of diligence in discovering the injury and the fraudulent concealment, are ordinarily for jury determination." (Citations and punctuation omitted.) *Shved v. Daly*, 174 Ga. App. 209, 210 (329 SE2d 536) (1985).

Plaintiff contends that defendant should have known that performing the biopsy of the lesion on her tube in the manner in which he did, to wit, removing one centimeter of the tube and invading the "lumen" of the tube, would render her sterile and that, therefore, his representations to her that her inability to conceive was due to the diseased condition of the tube constituted a fraudulent concealment of her true condition. Defendant testified that he did not intend to invade the lumen of the tube, and that he did not know that he had done so at the time of surgery. The pathologist's report on which plaintiff relies to support her claim of fraud shows only that "1 cm length of Fallopian tube" was removed.

" 'One of the elements of fraud is that defendant know that the representation is false. (Cits.) There is nothing in the record to reflect that (defendant) knew at any time that the treatment or opinion given by him was in error, nor is there any evidence that (defendant) fraudulently withheld such information from the patient.' [Cit.]" *Cannon v. Smith*, 187 Ga. App. 434, 436 (370 SE2d 529) (1988). See also *Hendrix v. Schrecengost*, 183 Ga. App. 201, 202 (358 SE2d 486) (1987). Here the record supports the defendant's contention that at the time he last saw plaintiff in October 1981, he believed, based on the condition of plaintiff's fallopian tube, that she would be unable to conceive and that he had no knowledge to suggest that he had done anything during the surgical procedure that would render plaintiff sterile. Although defendant also testified in his deposition that he did not intend to invade the lumen of the tube, such testimony only raises an inference of negligence, not of fraud. See *Shved v. Daly*, supra at 211. " 'If facts do exist which would toll the statute of (limitation [or repose], plaintiff) has the burden of setting forth and supporting these facts, (cit.)' [Cit.]. We find the defendant has pierced plaintiff's mere allegation of fraud and is entitled to summary judgment." *Hendrix v. Schrecengost*, supra at 203. See also *Rowell v. McCue*, 188 Ga. App. 528 (373 SE2d 243) (1988).

2. "Even if evidence of fraud exists, the statute of limitation [or repose] is not tolled when the plaintiff knew all facts necessary to

show malpractice before the running of the period of limitation. [Cit.]" *Hendrix v. Schrecengost*, supra at 203. Here the plaintiff by her own testimony knew "something was wrong" in December 1983, and was advised at that time by Dr. Pezzin to seek further medical treatment in order that her condition could be more precisely diagnosed. However, plaintiff ignored that advice and did not seek further consultation until December of 1986, over five years after she was last seen by the defendant. "The statute of limitation [or repose] is not tolled where '(t)here is nothing in the record to suggest that (plaintiff) was prevented from learning of (the doctor's) alleged negligence. . . .' *Shved v. Daly*, supra at 211." *Hendrix v. Schrecengost*, supra at 203. See also *Cannon v. Smith*, supra at 437; *Beaver v. Steinichen*, 182 Ga. App. 303 (355 SE2d 698) (1987); *Bray v. Dixon*, 176 Ga. App. 895, 898 (338 SE2d 872) (1985).

*Judgment affirmed. Banke, P. J., and Sognier, J., concur.*

DECIDED OCTOBER 31, 1989 —
REHEARING DENIED DECEMBER 5, 1989 — 

*Thomas E. Maddox, Jr.*, for appellant.
*Smith, Shaw, Maddox, Davidson & Graham, C. Wade Monk II*, for appellee.