611 A.2d 1255

Lillian P. GOLL, Administratrix of the Estate of Harriet H. Boyles, Deceased, Lilly A. Stancliff, Administratrix of the Estate of Eileen J. White, Deceased, Audrey Gardone, Administratrix of the Estate of Melinda L. Gardone, Deceased, and Holly A. Gardone, Deceased, Kathy S. Munro, Administratrix of the Estate of Randy A. White, Deceased and all Others Similarly Situated

v.

INSURANCE COMPANY OF NORTH AMERICA.

Appeal of Kathy S. MUNRO, Administratrix of the Estate of Randy A. White, Deceased.

Lillian P. GOLL, Administratrix of the Estate of Harriet H. Boyles, Deceased, Lilly A. Stancliff, Administratrix of the Estate of Eileen J. White, Deceased, Audrey Gardone, Administratrix of the Estate of Melinda L. Gardone, Deceased, and Holly A. Gardone, Deceased, Kathy S. Munro, Administratrix of the Estate of Randy A. White, Deceased and all Others Similarly Situated

v.

INSURANCE COMPANY OF NORTH AMERICA.

Appeal of Lillian P. GOLL, Administratrix of the Estate of Harriet H. Boyles, Deceased.

Lillian P. GOLL, Administratrix of the Estate of Harriet H. Boyles, Deceased, Lilly A. Stancliff, Administratrix of the Estate of Eileen J. White, Deceased, Audrey Gardone, Administratrix of the Estate of Melinda L. Gardone, Deceased, and Holly A. Gardone, Deceased, Kathy S. Munro, Administratrix of the Estate of Randy A. White, Deceased and All Others Similarly Situated

v.

INSURANCE COMPANY OF NORTH AMERICA.

Appeal of Lilly A. STANCLIFF, Administratrix of the Estate of Eileen J. White, Deceased.

Lillian P. GOLL, Administratrix of the Estate of Harriet H. Boyles, Deceased, Lilly A. Stancliff, Administratrix of the Estate of Eileen J. White, Deceased, Audrey Gardone, Administratrix of the Estate of Melinda L. Gardone, Deceased, and Holly A. Gardone, Deceased, Kathy S. Munro, Administratrix

of the Estate of Randy A. White, Deceased and All Others Similarly Situated

v.

INSURANCE COMPANY OF NORTH AMERICA.

Appeal of Rita GEIGER, Administratrix of
the Estate of Jerome Geiger, Deceased.

Lillian P. GOLL, Administratrix of the Estate of Harriet H. Boyles, Deceased, Lilly A. Stancliff, Administratrix of the Estate of Eileen J. White, Deceased, Audrey Gardone, Administratrix of the Estate of Melinda L. Gardone, Deceased, and Holly A. Gardone, Deceased, Kathy S. Munro, Administratrix of the Estate of Randy A. White, Deceased and all Others Similarly Situated

v.

INSURANCE COMPANY OF NORTH AMERICA.

Appeal of Michael J. MARINO, Administrator
of the Estate of Michael Marino, Deceased
and Margaret Marino, Deceased.

Lillian P. GOLL, Administratrix of the Estate of Harriet H. Boyles, Deceased, Lilly A. Stancliff, Administratrix of the Estate of Eileen J. White, Deceased, Audrey Gardone, Administratrix of the Estate of Melinda L. Gardone, Deceased, and Holly A. Gardone, Deceased, Kathy S. Munro, Administratrix of the Estate of Randy A. White, Deceased and all Others Similarly Situated

v.

INSURANCE COMPANY OF NORTH AMERICA.

Appeal of Audrey GARDONE, Administratrix of
the Estate of Melinda L. Gardone, Deceased.

Lillian P. GOLL, Administratrix of the Estate of Harriet H. Boyles, Deceased, Lilly A. Stancliff, Administratrix of the Estate of Eileen J. White, Deceased, Audrey Gardone, Administratrix of the Estate of Melinda L. Gardone, Deceased, and Holly A. Gardone, Deceased, Kathy S. Munro, Administratrix of the Estate of Randy A. White, Deceased and all Others Similarly Situated

v.

INSURANCE COMPANY OF NORTH AMERICA.

Appeal of Joanne WELLS, Administratrix of

48

the Estate of Richard Wells, Deceased.

Lillian P. GOLL, Administratrix of the Estate of Harriet H. Boyles, Deceased, Lilly A. Stancliff, Administratrix of the Estate of Eileen J. White, Deceased, Audrey Gardone, Administratrix of the Estate of Melinda L. Gardone, Deceased, and Holly A. Gardone, Deceased, Kathy S. Munro, Administratrix of the Estate of Randy A. White, Deceased and all Others Similarly Situated

v.

INSURANCE COMPANY OF NORTH AMERICA, Rita Geiger, Administratrix of the Estate of Jerome T. Geiger, Deceased, Intervenor.

Lillian P. GOLL, Administratrix of the Estate of Harriet H. Boyles, Deceased, Lilly A. Stancliff, Administratrix of the Estate of Eileen J. White, Deceased, Audrey Gardone, Administratrix of the Estate of Melinda L. Gardone, Deceased, and Holly A. Gardone, Deceased, Kathy S. Munro, Administratrix of the Estate of Randy A. White, Deceased and all Others Similarly Situated

v.

INSURANCE COMPANY OF NORTH AMERICA, Michael J. Marino, Administrator of the Estate of Michael Marino and Margaret Marino, Deceased, Intervenor.

Lillian P. GOLL, Administratrix of the Estate of Harriet H. Boyles, Deceased, Lilly A. Stancliff, Administratrix of the Estate of Eileen J. White, Deceased, Audrey Gardone, Administratrix of the Estate of Melinda L. Gardone, Deceased, and Holly A. Gardone, Deceased, Kathy S. Munro, Administratrix of the Estate of Randy A. White, Deceased and all Others Similarly Situated

v.

INSURANCE COMPANY OF NORTH AMERICA, Joanne F. Wells, Administratrix of the Estate of Richard S. Wells, Deceased, Intervenor.

Superior Court of Pennsylvania.

Argued Oct. 23, 1991.

Filed June 30, 1992.

Reargument Denied Sept. 11, 1992.

50

Pamela G. Shuman, Harrisburg, for appellants (in Nos. 14, 15, 16, 17, 18, 19 and 20), and for intervenors (in Nos. 52, 53 and 54).

Carl A. Solano, Philadelphia, for appellant (in Nos. 52, 53 and 54), and for appellee (in Nos. 14, 15, 16, 17, 18, 19 and 20).

Before WIEAND, MONTEMURO and KELLY, JJ.

MONTEMURO, Judge:

This consolidated appeal lies from an Order granting the motion for summary judgment of appellee, Insurance Company of North America (INA). Appellants, all representatives of the estates of individuals killed in motor vehicle accidents,[1] brought this class action suit[2] on behalf of themselves and others seeking to recover work loss benefits under the now repealed No-fault Motor Vehicle Insurance Act (No-fault Act), 40 P.S. §§ 1009.101–.701 (repealed 1984). The trial court found their action to be barred by the applicable statute of limitations and granted appellee's motion for summary judgement.

On appeal, appellants advance several theories in support of their contention that the instant action is not time barred. These theories are as follows: (1) the limitation period was

1. The decedents were either insureds of INA or had their claims assigned to INA pursuant to the No-fault Act assigned claims plan, 40 P.S. § 1009.108.

2. The record shows that the class has yet to be certified.

suspended by the pendency of an earlier class action suit;[3] and, (2) the statute of limitations was tolled by appellee's breach of its fiduciary duty to advise claimants of the scope of available benefits.[4] Upon review of these issues, we vacate the trial court's order in part, affirm in part, and remand for further action consistent with this opinion.

The standard to be applied in reviewing a grant of summary judgment has recently been reiterated by our supreme court in *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991). Specifically,

[s]ummary judgment is properly granted where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Pa.R.C.P. 1035(b). An entry of summary judgment may be granted only in cases where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co.,* 522 Pa. 367, 369, 562 A.2d 279, 280 (1989). The moving party has the burden of proving the nonexistence of any genuine issue of material fact. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 202–204, 412 A.2d 466, 468–69 (1979). The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Davis v. Pennzoil Co.,* 438 Pa. 194, 264 A.2d 597 (1970).

**3.** *Cunningham v. Insurance Co. of N. Am.,* 515 Pa. 486, 530 A.2d 407 (1987), *cert. denied,* 484 U.S. 1008, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988).

**4.** INA has filed a cross appeal wherein it contends that if the trial court permitted intervenors, Wells, Marino and Geiger, to assert claims as survivors of the deceased insureds, the trial court has committed reversible error. Our review of the record indicates that the trial court granted the petitions to intervene filed by these individuals in their capacity as administrator/trix of the insureds' estates. Therefore, the respective estates are party to this action, not the individual survivors of the deceased. Accordingly, INA's cross appeal does not present an issue for our review. *See supra* note 3.

*Id.,* 527 Pa. at 134–35, 589 A.2d 205, 206. Instantly, appellants argue that the grant of summary judgement is contrary to our supreme court's decision in *Dercoli v. Pennsylvania Nat'l. Mut. Ins. Co.,* 520 Pa. 471, 554 A.2d 906 (1989), and this court's recent decision in *Miller v. Keystone Ins. Co.,* 402 Pa.Super. 213, 586 A.2d 936 (1991), *appeal granted,* 528 Pa. 631, 598 A.2d 284 (1991).

*Dercoli* arose from an automobile accident where the husband/insured fell asleep at the wheel and crashed into a tractor-trailer. As a result of the accident, the husband perished and his wife suffered severe injuries. Mrs. Dercoli filed a claim with her husband's insurers relying solely on the insurers' agents to recover the benefits due to her under the policies. While receiving these benefits, our supreme court abolished the defense of interspousal immunity which had prevented Mrs. Dercoli from recovering for the personal injuries negligently inflicted by her husband.[5] Some four years later, Mrs. Dercoli learned that this bar to recovery had been lifted and she brought suit against her husband's insurers alleging that they had breached their duty of good faith and fair dealing by failing to advise her of this change in the law. Our supreme court agreed holding that when an insurer "undertakes to advise and counsel the insured in the insured's claim for benefits, [the duty of the insurance company to deal with its insureds fairly and in good faith requires the insurer] to inform the insured of all benefits and coverage that may be available and of any potential adverse interest pertaining to the insurer's liability under the applicable policy." *Dercoli,* 520 Pa. at 478, 554 A.2d at 909.[6]

In *Miller, supra,* which was handed down after the trial court had disposed of the instant case, the appellant brought suit to recover postmortem work loss benefits for the estate of her deceased son. The insurance company moved for summary judgement contending that the suit

5. *Hack v. Hack,* 495 Pa. 300, 433 A.2d 859 (1981).
6. The trial court herein distinguished *Dercoli* by finding no suggestion that INA had assumed any such duty of counselling. (T.C.O. at 10).

was barred by the limitations on actions set forth in the No-fault Act. The trial court agreed and granted the insurer's motion.

On appeal, Mrs. Miller argued that the insurer had breached the duty of good faith and fair dealing enunciated in *Dercoli,* thereby tolling the statute of limitations. A panel of this court agreed finding that by breaching this duty, the insurer's actions had tolled the limitations periods set forth in section 1009.106(c)(1) of the No-fault Act.

In reaching this decision, our court analyzed *Dercoli* and found that an insurer's actions will toll the relevant statute of limitations when the following three factors coalesce: 1) the insurer assumes responsibility for process-ing its insureds' claims; 2) the insurer knows that the insured is relying exclusively on its advice and counsel; and, 3) the insurer knows that its insured has a potential claim for additional benefits. *Miller,* 402 Pa.Super. at 223, 586 A.2d at 941. Each prong is a question of fact for resolution by the trier of fact. *Id.,* 402 Pa.Superior Ct. at 224–26, 586 A.2d at 941–42.

The *Miller* court found that the first of these prongs, along with the duty of good faith and fair dealing, to be implicit in the provisions of the No-fault Act, an argument adopted by the appellants herein. As to the second require-ment, the court in *Miller* found it critical that the claimant be without legal representation, as is true of all save one of the named appellants in the instant case. And finally, the third prong is satisfied when, during the pendency of a claim, the insurer either knows that its insured is entitled to additional benefits or is aware that its insured could be entitled to additional benefits. *See also Arnold v. Logue,* 405 Pa.Super. 422, 426–27, 592 A.2d 735, 736 (1991) (claim must be cognizable under the law at the time that it is made).

When the *Dercoli/Miller* three-prong test is ap-plied to the facts of the instant case, the provisions of the No-fault Act impose a responsibility on INA to pay to its

claimants all benefits they are entitled to receive under the act. *Miller*, 402 Pa.Super. at 224–25, 586 A.2d at 941–42. As to the second prong, the record shows that all appellants, except the Estate of Michael and Margaret Marino, were unrepresented by counsel when they made their claims for No-fault benefits. Accordingly, the second prong of the test is satisfied as to all appellants except the Marino Estate. Therefore, the only question remaining is when INA knew that appellants had a potential claim for work loss benefits.

Appellants argue that INA was aware of the potential for recovery of such benefits when our supreme court decided the companion cases of *Allstate Ins. Co. v. Heffner* and *Pontius v. United States Fidelity and Guar. Co.*, 491 Pa. 447, 421 A.2d 629 (1980) and therefore was obligated to inform their claimants of the ongoing litigation concerning an estate's right to recover postmortem work loss benefits. Appellee disagrees arguing that until this court resolved the issue of an estate's entitlement to such benefits in *Freeze v. Donegal Mut. Ins. Co.*, 301 Pa.Super. 344, 447 A.2d 999 (1982), *aff'd*, 504 Pa. 218, 470 A.2d 958 (1983), it did not have an obligation to inform its claimants that the possibility existed that they could become entitled to work loss benefits. Appellee's argument cannot prevail in light of the *Dercoli* and *Miller* decisions.

In *Dercoli*, our supreme court stated that when an insurer assumes the responsibility of advising its insured in recovery of benefits, "the insurer has a duty to inform the insured of all benefits and coverage that may be available *and of any adverse interest pertaining to the insurer's liability* under the applicable policy." *Id.*, 520 Pa. at 478, 554 A.2d at 909 (emphasis added). Thus, it is apparent that INA had a duty to inform its insureds not only of the benefits available to them, but also of any appellate litigation, that it was aware of, which could impose additional liability on INA.[7]

---

7. In *Miller,* we found that an internal memorandum written by an employee of the insurer was at least some evidence that the insurer

Although appellee acknowledges the import of our decision in *Miller*, it nevertheless asserts that *Miller* is inapposite to the instant appeal because there the issue was whether an insurer's breach of the duty owed to its insureds tolled the statute of limitations, whereas the issue here is whether breach of the same duty can toll a statute of repose. INA argues that a statute of repose cannot be tolled for any reason; thus, appellants' claims have been lost forever.

■ Section 1009.106(c)(1) provides that:

[when] no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim knows, or in the existence of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier. If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant; may be commenced not later than two years after the last payment of benefits.

This provision is both a statute of limitations and a statute of repose. A claimant is provided with a two year period to initiate an action which begins to run from the time that the claimant knew or should have known that a loss was incurred. This is a statute of limitations.

■ Section 1009.106(c)(1) then goes on to provide that in any event, an action must be instituted not later than four years after the accident. This portion is a statute of repose,[8] *Zubris v. Pa. Assigned Claims Plan*, 321 Pa.Super. 83, 87, 467 A.2d 1139, 1141 (1983); *Bond v. Gallen*, 292 Pa.Super. 207, 215, 437 A.2d 7, 11 (1981), intended to

was aware that the law governing recovery of work loss benefits was changing.

**8.** We are of the opinion that the requirement that "an action for additional benefits be commenced not later than two years after the last payment of benefits," as written, is also a statute of repose. 40 P.S. § 1009.106(c)(1).

extinguish an insurer's liability to its insureds, *see Catanzaro v. Wasco Products, Inc.,* 339 Pa.Super. 481, 489 A.2d 262 (1985) (statute of repose contained in 42 Pa.C.S.A. § 5536 abolishes any cause of action not brought within the mandated period); *Fetterhoff v. Fetterhoff,* 354 Pa.Super. 438, 512 A.2d 30 (1986), *alloc. denied,* 514 Pa. 624, 522 A.2d 50 (1987) (with a statute of repose, liability is extinguished upon passage of the statutory period). This " 'impose[s] on some plaintiffs the hardship of having a claim extinguished before it even exists. . . .' " *Luzadder v. Despatch Oven Co.,* 834 F.2d 355, 358 (3d Cir.1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988) (quoting W. Keeton, *Prosser and Keeton on Torts* § 30, p. 168 (5th Edition 1984)).

The issue then becomes whether Pennsylvania law provides for the tolling of a statute of repose. Although our research of Pennsylvania law has failed to uncover a definitive answer to this question, we have found case law from other jurisdictions helpful in resolving this issue.

In *Lasoya v. Sunay,* 193 Ga.App. 814, 389 S.E.2d 339 (1989), the plaintiff brought a medical malpractice claim alleging that she had been rendered sterile because the defendant had negligently performed a biopsy on her left fallopian tube. The defendant moved for summary judgement contending that the plaintiff's action was barred by the applicable statute of limitations.[9] The motion was granted and the plaintiff took an appeal to the Georgia Court of Appeals.

On appeal, the plaintiff argued that although she had failed to file an action until six years after her surgery, her failure to bring suit was due to the defendant's misrepresentation as to the cause of her sterility. Before addressing the merits of the plaintiff's claim, the Georgia Court of Appeals noted that although the plaintiff's action was pre-

**9.** The statute of limitations relevant to the *Lasoya* claim permits a medical malpractice action to be filed within two years of the resulting death or injury; however, in no event, may an action for medical malpractice be brought more that five years after the date on which the negligent or wrongful act occurred. Ga.Code Ann. § 9–3–71.

cluded by the five year statute of repose, a statute of repose does not relieve a defendant from liability when the defendant has concealed the injuries from the plaintiff. The *Lasoya* court then affirmed the grant of summary judgement finding that there was nothing in the record to indicate that the defendant had fraudulently misrepresented the cause of the plaintiff's sterility.

A different result was reached by the Ohio Supreme Court in *Shover v. Cordis Corp.*, 61 Ohio St.3d 213, 574 N.E.2d 457 (1991), *reh'g denied,* 62 Ohio St.3d 1410, 577 N.E.2d 362 (1991). *Shover* involved a case where an individual died a year after receiving a pacemaker manufactured by the defendant. Four years later, the decedent's son read a newspaper article concerning a recall of pacemakers manufactured by the defendant and the defendant's plea of guilty to charges that it had concealed defects in its pacemakers. Suspecting there was a connection between his mother's death and the defective pacemakers, the plaintiff retained counsel and brought suit against the Cordis Corporation.

Cordis moved to dismiss the claim asserting that the plaintiff's wrongful death claim was barred by the two year statute of limitations.[10] The trial court agreed and the action was dismissed. The plaintiff appealed the dismissal arguing that fraud will toll the applicable statute of limitations. The Ohio Supreme Court disagreed holding that the legislature intended for wrongful death actions to be brought within two years of death regardless of when the cause of death was discovered. Therefore, the limitations period could not be tolled because of the defendant's fraud. However, the *Shover* court did note that although the plaintiff's wrongful death claim was time barred, he could bring an action for common law fraud because the limita-

---

**10.** Ohio Rev.Code Ann. § 2125.02(D). Section 2125.02(D) provides that an action for wrongful death shall be commenced within two years after the decedent's death. Although the court refers to this section as a statute of limitations, it is actually a statute of repose because a defendant's liability ends upon passage of the two year period.

tions period for this cause of action does not begin to run until discovery of the fraud.

■ Although we find the *Shover* decision to be sound, we decline to adopt its reasoning. We do not believe that an insurer should be able to avoid its obligation to its insureds by resorting to fraudulent conduct. Accordingly, we hold that an insurers breach of its duty of good faith and fair dealing will toll the limitations periods set out at section 1009.106(c) of the No-fault Act. Therefore, we vacate that portion of the trial court's opinion which grants summary judgement against appellants Goll, Stancliff, Gardone, Munro, Geiger, and Wells.[11] Now, the only question that remains is whether there is an alternate theory which will toll the limitations period applicable to the claim of the Marino Estate.

Appellants argue that the filing of *Cunningham,* a class action suit seeking postmortem work loss benefits brought by the parents of a woman killed in an automobile accident, served to toll the statute of limitations as to themselves. However, the timeliness of *Cunningham* itself depended upon a prior case, *Nye v. Erie Ins. Exch.,* 504 Pa. 3, 470 A.2d 98 (1983).[12] The appellants contend that the statute of limitations has been tolled as to them under the normal rule that "upon the filing of a class action, the statute of limitations is normally tolled for all putative members in the class." *Cunningham,* 515 Pa. at 489, 530 A.2d at 408. However, in *Nye* no representative of the class with standing to sue had been found, and the case was dismissed. The Cunninghams therefore had no valid pending action upon which to base the tolling of the statute; the tolling effect was negated, and the Cunninghams' action was itself

11. Appellee argues that it owes a lesser duty to a claimant under the assigned claims plan, 40 P.S. § 1009.108, as opposed to the duty owed to one of its insureds. We fail to find any merit to this argument. Accordingly, we find that the duty of good faith and fair dealing applies equally to all claimants under the No-fault Act.

12. Thirty-one defendant insurance companies were involved in *Nye,* of which one was INA, the defendant in *Cunningham.* However, the plaintiff in *Nye* was insured only by Erie.

time barred. The trial court herein found that because the Cunninghams' suit was out of time, their case offered no relief from the effects of the statute herein.

Appellants argue that because the facts of *Cunningham* are very narrow, it fails to provide support for the position taken by the trial court. They contend that "the Supreme court held in *Cunningham* that the only circumstance under which a class action lawsuit does not toll the statute of limitations from the time of its filing is where the representative lacks standing to sue and where such lack is clear in the pleadings." (Appellant's Brief at 49). The corollary to this theorem is that since the Cunninghams themselves did not lack standing, their case, regardless of outcome, tolled the statute as to appellants. We do not agree.

A class action is defined as "any action brought by or against parties as representatives of a class until the court by order refuses to certify it as such or revokes a prior certification under these rules." Pa.R.C.P. 1701(a). As the explanatory comment points out, this definition is important in determining whether the commencement of a class action tolls the statute of limitations as to putative members of the class. This definition carries into effect the decision of the United States Supreme Court in *American Pipe and Const. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), *reh'g denied*, 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974), which held that commencement of a class action suspends the applicable statute of limitations during the interim period beginning at the commencement of the action and ending upon a court's refusal to certify the class.

■ It is important to note that in *American Pipe*, the Supreme Court held that "the filing of a *timely* class action complaint commences that action for all members of the class as subsequently defined." *Id.* at 550, 94 S.Ct. at 764 (emphasis added). It is therefore apparent that the filing of an untimely class action does not commence the action for the yet to be identified members of the class. Accordingly, we affirm the decision of the trial court which held that the

filing of an untimely complaint does not suspend the statute of limitations for the unidentified class members. Thus, the claim of the Marino Estate is time barred under section 1009.106(c)(1) of the No-fault Act.

In summary, the grant of summary judgement is vacated as to appellants Goll, Stancliff, Gardone, Munro, Geiger, and Wells. The order is affirmed as to appellant Marino. Case remanded for action consistent with this decision. Jurisdiction relinquished.

WIEAND, J., files a concurring and dissenting opinion.

WIEAND, Judge, concurring and dissenting.

I respectfully dissent from the majority's decision to reverse in part the summary judgments entered by the trial court. All claims made in the instant action were barred by the applicable statute of limitations. Therefore, I would affirm in toto the well reasoned decision of the trial court to enter summary judgment in favor of the defendant insurer. The statute of limitations is not tolled merely because one who makes a claim against an insurance company is unrepresented by counsel.

The majority has correctly recited the standard to be applied by an appellate court when reviewing the grant of summary judgment by a trial court. In determining whether the trial court erred in granting a motion for summary judgment, a reviewing court must determine whether the "pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment *as a matter of law.*" Pa.R.C.P. 1035(b) (emphasis added). See: *Thompson v. Nason Hospital,* 527 Pa. 330, 333, 591 A.2d 703, 704 (1991); *Marks v. Tasman,* 527 Pa. 132, 134, 589 A.2d 205, 206 (1991); *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 174–175, 507 A.2d 323, 331 (1986); *Thorsen v. Iron and Glass Bank,* 328 Pa.Super. 135, 140–141, 476 A.2d 928, 930–931 (1984); *Rybas v. Wapner,* 311 Pa.Super. 50, 54, 457 A.2d 108, 109

(1983). The granting of a summary judgment, therefore, is reviewable for error of law.

Unfortunately, several Superior Court decisions have used language suggesting that a trial court's grant of a motion for summary judgment will not be reversed in the absence of an abuse of discretion. This implies that the granting of a motion for summary judgment is discretionary with the trial court. This is simply wrong. Whether to grant a motion for summary judgment is, purely and simply, an issue of law and reviewable as such.

The trial court in the instant case did not commit an error of law when it entered summary judgment in favor of INA, and because there was no error of law, I would affirm that decision. There was no error because, as a matter of law, all actions for work loss benefits were barred by the statute of limitations. See: *Cunningham v. Insurance Company of North America*, 515 Pa. 486, 530 A.2d 407 (1987); *Gabovitz v. State Automobile Insurance Association*, 362 Pa.Super. 17, 523 A.2d 403 (1987).

In *Cunningham,* the Supreme Court held that the statute of limitations had not been tolled by a prior class action [1] which had been palpably non-justiciable because the class representative plaintiff lacked standing to maintain the action. In dismissing the action, the Court said:

Statutes of limitations embody important policy judgments that must be taken into account in determining the scope of application of the tolling principle. Those policy judgments include a belief that defendants should be protected against the prejudice of having to defend against stale claims, *Insurance Company of North America v. Carnahan,* 446 Pa. 48, 51, 284 A.2d 728, 729 (1971), as well as the notion that, at some point, claims should be laid to rest so that security and stability can be restored to human affairs, *Schmucker v. Naugle,* 426 Pa. 203, 205–206, 231 A.2d 121, 123 (1967). The defense of the statute of limitations is not a technical defense but

1. This action was *Nye v. Erie Insurance Exchange,* 504 Pa. 3, 470 A.2d 98 (1983).

rather is a substantial and meritorious one, and has been regarded as favored in the law and as advancing the welfare of society. *Id.*

*Id.,* 515 Pa. at 491, 530 A.2d at 409.

In this case, appellants argue that the statute of limitations was tolled as to them by the prior action brought against Insurance Company of North America (INA) in *Cunningham v. Insurance Company of North America, supra.* However, the *Cunningham* action was non-justiciable because it was untimely and, therefore, barred by the statute of limitations. As such, it was not effective to toll the statute of limitations. Appellants' argument, as the Supreme Court observed in *Cunningham v. Insurance Company of North America, supra,* 515 Pa. at 494, 530 A.2d at 411, "rests upon the faulty premise that the legislature, in enacting statutes of limitations, intended merely to assure that defendants would be given notice, within a given time frame, that there are individuals who *might,* if they were aware of their rights and desirous of pursuing them, bring actions against such defendants.... As stated in *Crown, Cork & Seal Co.,* 462 U.S. [345], 352, 103 S.Ct. [2392], 2397, 76 L.Ed.2d [628], 635 [1983], '[l]imitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights....' " (emphasis in original).

I cannot help but observe, as did the Supreme Court in *Cunningham,* that counsel for the appellants in this case is the same counsel who filed the class actions in *Nye* and in *Cunningham.* In the *Nye* complaint,

> there appears an admission that counsel's purpose in bringing suit against thirty-one insurance companies even though he represented an insured of only one of them was that he sought to toll the statute of limitations for all carriers, inasmuch as counsel believed that many potential plaintiffs would not otherwise act upon their rights. We regard such an action as a clear abuse of the goals of class action procedures. The procedures do not exist to sanction what would be regarded by many as a course of

officious intermeddling on the part of counsel, who, motivated by concern for plaintiffs who would not otherwise file suits, has embarked on a course of initiating litigation on behalf of those who have slept on their rights. Indeed, this case presents a most compelling example of tactics employed to subvert the legislative intent embodied in the statute of limitations, and the rules governing tolling will not be extended to give effect to such tactics.

*Cunningham v. Insurance Company of North America, supra,* 515 Pa. at 493–494, 530 A.2d at 410. The same reasoning is applicable to the instant attempt to use the untimely *Cunningham* action as a tolling device. I am satisfied, therefore, that the statute of limitations was not tolled by the untimely class action instituted by *Cunningham.*

I am also satisfied that the statute of limitations was not tolled by INA's failure to advise its insureds before the Supreme Court decision in *Allstate Insurance Co. v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980) and/or the Superior Court decision in *Freeze v. Donegal Mutual Insurance Co.,* 301 Pa.Super. 344, 447 A.2d 999 (1982), *aff'd,* 504 Pa. 218, 470 A.2d 958 (1983), that they might have claims for work loss benefits. Indeed, that was precisely the holding of the Superior Court in *Gabovitz v. State Automobile Insurance Association, supra.* There, the same counsel who represents the present appellants argued that the defendant-insurer was estopped to assert the defense of the statute of limitations because it had failed to alert its insureds that they might have a claim for work loss benefits. The Superior Court rejected this argument, saying:

" '[I]n the absence of expressly proved fraud, there can be no estoppel based on the acts or conduct of the party sought to be estopped, where they are as consistent with honest purpose and with absence of negligence as with their opposites.' " *In re Tallarico's Estate,* 425 Pa. 280, 288, 228 A.2d 736, 741 (1967), quoting *Northwestern National Bank v. Commonwealth,* 345 Pa. 192, 196, 27 A.2d 20, 23 (1942). Thus, "[a] mutual mistake as to the law, knowledge of which is equally available to both parties, cannot raise an estoppel." *Ham v. Gouge,* 214

Pa.Super. 423, 426, 257 A.2d 650, 652 (1969). Similarly, an estoppel cannot be created by representations or opinions concerning matters of law. See: 31 C.J.S. Estoppel § 79.

. . . .

[T]he record is clear that the delay by Gabovitz in filing her claim for work loss benefits was attributable not to any action or inaction on the part of [the insurer], but rather to her own mistaken judgment that such benefits simply were not available under the No-fault Act. As we have already suggested, Gabovitz's misconception regarding her right to recover is not a ground upon which an estoppel will lie. As a matter of law, therefore, State Auto is not estopped from asserting the defense of the statute of limitations.

*Id.*, 362 Pa.Superior Ct. at 23–25, 523 A.2d at 406–407.

*Gabovitz* has not been overruled by the Supreme Court in *Dercoli v. Pennsylvania National Mutual Ins. Co.*, 520 Pa. 471, 554 A.2d 906 (1989) or by the Superior Court in *Miller v. Keystone Insurance Co.*, 402 Pa.Super. 213, 586 A.2d 936 (1991), *alloc. granted*, 528 Pa. 631, 598 A.2d 284 (1991).[2]

In *Dercoli*, the Supreme Court expressly decided the following issue: "[W]hether the duty of fair dealing and good faith requires an automobile insurer to properly advise its insured of the insured's entitlement to present a claim or claims under the applicable policy *where the insurer advises its insured that legal representation is unnecessary and induces the insured to rely upon the insurer to pay appropriate benefits?*" *Id.*, 520 Pa. at 473, 554 A.2d at 907 (emphasis added). The trial court had sustained the defendant-insurer's demurrer to the plaintiff's complaint and had dismissed the plaintiff's suit against the insurers. Therefore, the Court accepted as true all material facts and reasonable inferences alleged in the complaint. These included the following:

**2.** The *Miller* court attempted to distinguish the *Gabovitz* decision, although it is questionable whether there is any real difference.

17.  At all times herein material, Plaintiff was not represented by legal Counsel, *and Defendants' Agents represented to and assured Plaintiff that her claim would be processed without the need for Plaintiff to be independently represented.*

18.  Plaintiff reasonably relied entirely upon the advice of Defendants' agents as to the nature and extent of benefits which were due to her under said insurance contracts.  Further, *Defendant's agents were fully cognizant of Plaintiff's said reasonable reliance and lack of independent representation.*  (emphasis added).

Instead of adequately informing the plaintiff regarding the benefits due under her automobile insurance policy, the insurers in *Dercoli* had withheld recent changes in the law regarding interspousal immunity which would have enabled the plaintiff to increase her recovery from the insurers. Under these circumstances, where the insurers' agents "voluntarily undertook to provide assistance and advice to [the plaintiff] and in the process advised her against retaining independent legal counsel," the Supreme Court held the insurers had breached their duty of good faith and fair dealing to the plaintiff-insured.  *Id.,* 520 Pa. at 477, 554 A.2d at 909.

The lead opinion in *Dercoli* was authored by Justice Larsen, with only one other Justice joining.  The narrow scope of the Court's holding was demonstrated by a concurring opinion, written by Justice Papadakos and joined by Justice McDermott, which observed that the "insurers [had] breached a voluntarily assumed fiduciary duty to provide [plaintiff] with all available benefits, ...," and further, that "in this case, the insurers themselves voluntarily [had] transformed themselves into legal advisors to the [plaintiff]."  *Id.,* 520 Pa. at 481–482, 554 A.2d at 911.  Under these circumstances, a majority of the Court refused to apply the bar of the statute of limitations.  Chief Justice Nix and Justices Flaherty and Zappala dissented.

*Miller v. Keystone Insurance Co., supra,* was an unwarranted extension of *Dercoli.*  It held that where an insured

was unrepresented by counsel a duty to advise the insured of his or her rights under a policy of automobile insurance was imposed upon the insurer "implicitly" by the terms of the No-fault Motor Vehicle Insurance Act. This statute, the Court observed, "encouraged claimants to place their trust in their insurance companies to see to it ... that they would receive all to which they were entitled under the Act." *Id.*, 402 Pa.Superior Ct. at 224–225, 586 A.2d at 942. In effect, the Miller court sought to extend the *Dercoli* holding to all persons who have a claim against an insurance company while they are unrepresented by counsel. To hold that the statute of limitations was not applicable to such claimants, however, ignored the purposes of the statute of limitations to bar actions by claimants who have slept on their rights.

A careful review of *Dercoli* reveals that a majority of the Supreme Court did not simply rely on the fact that the plaintiff therein had been unrepresented by counsel. Rather, it was the *voluntary* acts of the agents of the insurers which made the crucial difference to the authors of the lead and concurring opinions in *Dercoli*. Neither *Dercoli* nor any appellate decision prior to *Miller* has held that a Pennsylvania insurer owes a duty to provide its insured with legal advice regarding whether or when to sue the insurer. Indeed, such a notion is contrary to the recent decision in *Kilmore v. Erie Insurance Co.*, 407 Pa.Super. 245, 595 A.2d 623 (1991), where Judge Tamilia, writing for the majority, appropriately observed:

> Assuming, arguendo, the nature of an insurance contract presumes the insurer assumes the responsibility for processing its insured's claim, we find no evidence the remaining *Dercoli* factors were established. [Plaintiffs] have not asserted that they, as the insureds, were acting in reliance upon the insurers' advice and counsel. In fact, it appears advice and counsel from the respective insurers was neither sought nor offered, and in the absence of the former action we find no requirement of the latter.

*Id.*, 407 Pa.Superior Ct. at 251–252, 595 A.2d at 626.

The plaintiffs in the instant case have not alleged that INA voluntarily offered to process their respective claims

without the need for independent representation. Although plaintiffs argue, in conclusory fashion, that they reasonably relied on INA for their benefits, there is no evidence that INA induced or encouraged such reliance or, indeed, that INA had any knowledge that the insureds were relying on their insurer for advice. Absent proof that the insurer deliberately induced its insured to forego legal representation and rely upon it for advice or, at least, that the insurer was aware that its insured was relying on its advice and counsel, I am unable to join the majority's ruling that the insurer breached its duty of good faith and fair dealing by failing to pay work loss benefits for which no claim had been made. When the statute of limitations expired, the instant claims for work loss benefits were barred. Here, as in *Gabovitz*, it "is clear that the delay [by plaintiffs] in filing [their] claim[s] for work loss benefits was attributable not to any action or inaction on the part of the [insurer] but, rather, to [the] mistaken judgment that such benefits simply were not available under the No-fault Act." *Gabovitz v. State Auto Insurance Association, supra*, 362 Pa.Superior Ct. at 25, 523 A.2d at 407. For this reason, I would affirm the judgments entered by the trial court on all claims.